UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re

Gregory J. Tarone,

                Debtor.
--------------------------------------------------------x
Gregory J. Tarone,

                Plaintiff,

-against-

Madeleine K. Tarone, John Ray,
John Ray and Associates,
Nieroda & Associates, P.C.,

                Defendants.
--------------------------------------------------------x

Chapter 7

Case No. 07-70181-CEC

Adv. Pro. No. 09-8285-CEC

## DECISION

APPEARANCES:

Gregory Tarone, Esq.
27 Market Street
Mastic Beach, NY 11951
Plaintiff *pro se*

Daniel W. Nieroda, Jr., Esq.
Nieroda & Associates, P.C.
260 West Main St
Bay Shore, NY 11706
Attorneys for Defendant Nieroda &
Associates, P.C.,

John Ray, Esq.
John Ray and Associates
P.O. Box 5440
122 North Country Road
Miller Place, NY 11764
Attorneys for Defendants Madeline K.
Tarone, John Ray, and John Ray &
Associates

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Madeline K. Tarone, John Ray, John Ray & Associates ("JR&A"), and Nieroda & Associates, P.C. ("N&A," and together with Mrs. Tarone, Mr. Ray, and JR&A, the "Defendants") to dismiss this adversary proceeding commenced by Gregory J. Tarone (the "Debtor"). Because matters outside the pleadings were presented and not excluded by the Court, and because all parties were given the opportunity to present pertinent material, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure (the "Rules"), made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this motion will be treated as one for summary judgment under Rule 56, made applicable pursuant to Bankruptcy Rule 7056. For the following reasons, the motion is granted.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(I) and (O) and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The following are undisputed facts or matters of which this Court may take judicial notice.

On December 22, 2005, the Debtor's marriage to Mrs. Tarone was dissolved pursuant to a judgment of divorce issued by the New York State Supreme Court (the "State Court").

On January 19, 2007, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. At the time of the filing, the State Court had not yet determined the issues of equitable distribution, maintenance, or recovery of counsel fees in the matrimonial action.

On May 1, 2007, an order was entered granting the Debtor a discharge pursuant to § 727 of the Bankruptcy Code.[1]

On July 25, 2007, the Debtor filed a motion seeking, among other things, a determination that Mrs. Tarone, Mr. Ray, JR&A, and the Honorable Elaine Jackson Stack, the presiding judge in the matrimonial action, violated the automatic stay imposed by § 362. The Debtor also sought to vacate all post-petition orders issued by Justice Stack on the basis that they were issued in violation of § 362. Additionally, the Debtor sought turnover of his homestead exemption, which was $50,000 from the proceeds of the sale of the Debtor's residence (the "Homestead Exemption").

On August 7, 2007, a hearing was held on the Debtor's motion. Based upon the record established at that hearing, on August 17, 2007, the Court entered an order lifting the automatic stay, to the extent applicable, allowing the State Court to determine "any issues relating to the termination of the parties' marriage and the rights of the parties to [m]aintenance, [s]upport, and [e]quitable [d]istribution, if any." (Compl. Ex. A at 2.) The order also provided that this Court would determine the treatment of any matrimonial claims under the Bankruptcy Code. (Id.) This Court retained its jurisdiction to determine whether Mrs. Tarone, Mr. Ray and JR&A are entitled to restrain or otherwise attach the Homestead Exemption. (Id. at 2-3.) The chapter 7 trustee was directed to hold the Homestead Exemption in escrow until further order of the Court. (Id. at 3.) The order also provided that, pending the resolution of the Debtor's motion, Mr. Ray, JR&A and Mrs. Tarone "be and hereby are, enjoined and restrained from presenting or prosecuting any claims in the [State Court], or in any other [c]ourt, seeking to restrain and otherwise execute upon the Homestead Exemption claimed by the Debtor in this bankruptcy proceeding." (Id. at 2.)

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, 11 U.S.C.

On October 31, 2007, the State Court rendered a decision regarding divorce, maintenance, support, and equitable distribution. (Compl. Ex. B.) It determined that Mrs. Tarone and the Debtor have equal interests in a painting and two cars, but awarded Mrs. Tarone a piano on the basis that it was a gift from her parents. The State Court further held that it had jurisdiction to determine the rights of the parties in the Homestead Exemption because it was not part of the bankruptcy estate. (Compl. Ex. B at 18.) The State Court ultimately determined that Mrs. Tarone was entitled to 50% of the Homestead Exemption. (Id. at 18-19.) The State Court also awarded durational maintenance to Mrs. Tarone in the amount of $20,000 annually, or $1,666.67 per month for 36 months. (Id. at 15.) The Debtor appealed this order.

By letter dated November 5, 2007, Mr. Ray sought to obtain possession of the piano, painting, and title and registration to a Lincoln Continental pursuant to the State Court's October 31, 2007 order. (Compl. Ex. H.)

On December 10, 2007, the State Court issued an order directing the Debtor to pay Mrs. Tarone's attorneys' fees in the amount of $7,500 to N&A, and $50,000 to JR&A. (Compl. Ex. C at 7.) The State Court directed the Debtor to pay N&A's fees within 120 days, and JR&A's fees within 60 days. (Id.) The State Court further ordered that, if the Debtor failed to comply, N&A and JR&A were to be awarded judgment in the fee amounts, plus statutory interest. (Id. at 7-8.) The Debtor appealed this order.

On January 15, 2008, the State Court awarded Mrs. Tarone an additional $53,500, representing 50% of the surplus sale proceeds of the Debtor's residence after the secured creditors' claims were satisfied. (Compl. Ex. D at 3.) The State Court acknowledged that Mrs. Tarone's right to collect this award from the estate vis-à-vis the other unsecured creditors was within the jurisdiction of the bankruptcy court. (Id.) The Debtor appealed this order.

On February 4, 2008, a continued hearing was held on the Debtor's July 25, 2007 motion, seeking, in part, turnover of the Homestead Exemption. Thereafter, on March 3, 2008, based upon the record established at the February 4, 2008 hearing, this Court issued an order directing that the Homestead Exemption be released to the Debtor, unless the State Court directed otherwise before that date, in which case, the Homestead Exemption was to be released as directed by the State Court. (Compl. Ex. E.)

On March 10, 2008, upon the Debtor's motion to the State Court seeking turnover of $20-25,000 of the Homestead Exemption, and seeking an order directing that the remainder be deposited in escrow with someone other than Mr. Ray, the State Court issued an order directing that the entire Homestead Exemption be deposited with the Treasurer of Suffolk County. (Defs.' Reply, State Court Order dated March 10, 2008.)

On February 3, 2009, the Appellate Division of the Supreme Court of the State of New York (the "Appellate Division") affirmed the orders that were issued by the State Court on October 31, 2007, December 10, 2007, and January 15, 2008 relating to equitable distribution (including distribution of the Homestead Exemption), maintenance, and attorneys' fees. (Compl. Ex. F.)

By letter dated February 23, 2009, JR&A sought to obtain payment of the attorneys' fees, maintenance, and Mrs. Tarone's equitable share in a Lincoln Navigator; turnover of the piano and title to the Lincoln Continental; information relating to the location of the painting or the proceeds if the painting was sold. (Compl. Ex. G.)

On April 3, 2009, upon the motion of Mrs. Tarone, the Appellate Division granted the release of the Homestead Exemption to Mr. Ray, less any fees owed to the Treasurer of Suffolk County. (Compl. Ex. I.) Thereafter, on April 9, 2009, in compliance with the Appellate

Division's order, the Treasurer issued a check to Mr. Ray for the Homestead Exemption, less the Treasurer's fees, in the amount of $49,892.42.  (Compl. Ex. J.)

On April 13, 2009, JR&A obtained a judgment against the Debtor in the amount of $55,289.57 for unpaid legal fees, plus interest.  (Compl. Ex. K.)

On April 23, 2009, N&A obtained a judgment against the Debtor in the amount of $8,197.45 for unpaid legal fees, plus interest.  (Compl. Ex. L.)

On June 1, 2009, the Debtor filed an application with the Appellate Division seeking to vacate the State Court's April 3, 2009 order directing the release of the Homestead Exemption.  (Compl. Ex. M.)  On the same day, the Appellate Division issued an order to show cause scheduling the Debtor's application for a hearing.  The order also included a provision directing Mr. Ray to return the Homestead Exemption to escrow pending the determination of the Debtor's application.  Robert M. Meguin, an attorney associated with JR&A, affirmed under penalty of perjury that the funds were already distributed.  (Compl. Ex. M.; see also Compl. Ex. N.)  The Debtor's motion to vacate the State Court's April 3, 2009 order was ultimately denied by the Appellate Division on July 2, 2009.  (Compl. Ex. O.)

On July 14, 2009, the Debtor commenced this adversary proceeding against the Defendants seeking (i) a determination that the maintenance and attorneys' fees awarded by the State Court is dischargeable; (ii) judgment against the Defendants in the amount of the net homestead exemption, or $49,892.42; (iii) compensatory and punitive damages in the amount of $100,000; (iv)  an order directing Mr. Ray, JR&A, and N&A to expunge their state court judgments; and (iv) sanctions against Mr. Ray, Daniel L. Nieroda, Sr., JR&A and N&A for violations of court orders and of the Bankruptcy Code.

On October 15, 2009, N&A filed an answer to the complaint.

On October 30, 2009, Mrs. Tarone, Mr. Ray, and JR&A filed the instant motion. N&A joined in the motion. The Debtor argues that this motion is a delay tactic and requests that sanctions and criminal penalties be imposed against the Defendants. Additionally, notwithstanding the fact that the Debtor is an attorney and is appearing pro se, the Debtor requests expenses and attorneys' fees.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted).

DISCUSSION

A. The award of maintenance and attorneys' fees are nondischargeable under § 523.

The Debtor argues that the maintenance and attorneys' fees awarded by the State Court are dischargeable pursuant to § 727 because they are not true domestic support obligations, and are therefore not excepted from discharge under § 523(a)(5) or (a)(15). The Defendants argue that the award of maintenance and attorneys' fees are nondischargeable pursuant to § 523.

Section 523(a), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005, provides, in pertinent part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – . . . (5) for a domestic support obligation; . . . [or] (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. 523(a)(5), (15).[2]

Prior to BAPCPA, § 523(a)(15) permitted the discharge of non-support obligations owed to a former spouse under certain circumstances. Under the prior law, to discharge these debts, a court was required to determine that the debtor did not have the ability to repay the obligation, and that the discharge of the debt would yield a benefit to the debtor that outweighs the detriment of the discharge to the former spouse or child of the debtor. Gilman v. Golio (In re Golio), 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008).

However, under BAPCPA, all debts owed to a spouse, former spouse, or child of a debtor are nondischargeable if incurred in the course of a divorce proceeding, notwithstanding the debtor's ability to pay the debt or the relative benefits and detriments to the parties. "In

---

[2] The amendments to § 523 apply because the Debtor's bankruptcy case was commenced after October 17, 2005, the effective date of BAPCPA.

individual Chapter 7 and 11 cases 'the distinction between a domestic support obligation and other types of obligations arising out of a martial relationship [such as an award of attorneys' fees] is of no practical consequence in determining the dischargeability of the debt. . . .'" Id. (quoting 4 Collier on Bankruptcy, ¶ 523.21 at 523-118 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.)).

The Debtor relies on In re Norbut, 387 B.R. 199 (Bankr. S.D. Ohio 2008), and argues that whether an obligation is "in the nature of support" remains relevant to the dischargeability of the maintenance and attorneys' fees awards.  The Debtor's reliance on Norbut is misplaced, and his argument must be rejected.  Although that decision was issued in 2008, after BAPCPA's effective date, it applied pre-BAPCPA law because that bankruptcy case was commenced prior to BAPCPA's effective date of October 17, 2005.  Indeed, the court in Norbut specifically noted that § 523(a)(15), as amended by BAPCPA, did not apply to that case.  Norbut, 387 B.R. at 205 n.3.

It is undisputed that the maintenance and attorneys' fees awarded by the State Court are debts that were incurred by the Debtor in the course of the divorce proceedings.  As such, it is irrelevant whether those awards constitute true support obligations, because even if not encompassed within § 523(a)(5), they are nondischargeable pursuant to § 523(a)(15).  Additionally, it should be noted that the fact that the attorneys' fees are payable directly to JR&A and N&A, and not to Mrs. Tarone, does not remove these debts from the scope of § 523(a)(15). See Prensky v. Clair Greifer LLP, No. 09-6200, 2010 WL 2674039, at *6-8 (D.N.J. June 30, 2010); Golio, 393 B.R. at 63.  Because these debts are payable to JR&A and N&A for Mrs. Tarone's benefit, the requirement of § 523(a)(15) that the debts be owed to a former spouse of the debtor is satisfied.  See Prensky, 2010 WL 2674039, at *6-8; Golio, 393 B.R. at 63.

B. <u>The Debtor is not entitled to a judgment in the amount of $49,892.42.</u>

The Debtor's claim for judgment in the amount of $49,892.42, representing the net Homestead Exemption remitted to Mr. Ray by the Treasurer of Suffolk County, must also be denied. As an initial matter, the State Court determined that the Debtor was only entitled to 50% of the Homestead Exemption, and therefore, there is no basis to award the Debtor a judgment for 100% of the net Homestead Exemption. Moreover, the State Court had jurisdiction to direct the release of the net Homestead Exemption to Mr. Ray, and the Debtor cannot collaterally attack that decision in this Court.

District courts have exclusive jurisdiction over cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). However, the district court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157, the district court in this district has referred all such cases and civil proceedings to this Court.

A civil proceeding is "[a]nything that occurs within a case . . . [including] contested matters, adversary proceedings, and plenary actions." <u>Publicker Indus. Inc. v. United States (In re Cuyahoga Equip.)</u>, 980 F.2d 110, 114 (2d Cir. 1992) (<u>citing</u> H.R. Rep. No. 595, 445 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6401). "'Arising in' and 'arising under' proceedings encompass the matters that are at the core of the jurisdiction of the bankruptcy courts, and depend upon the application or construction of bankruptcy law as expressed in [the Bankruptcy Code].'" <u>Osanitsch v. Marconi PLC (In re Marconi PLC)</u>, 363 B.R. 361, 366 (S.D.N.Y. 2007) (<u>quoting</u> <u>In re Leco Enters.</u>, 144 B.R. 244, 248 (S.D.N.Y. 1992)). In order for a proceeding to relate to a bankruptcy case, it must have a significant connection with the case and have a potential effect on the bankruptcy estate. <u>Id</u>; <u>see also</u> <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300,

308 (1995); Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 160 (S.D.N.Y. 1995) ("An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate." (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984))).

Mrs. Tarone's rights with respect to the Debtor's Homestead Exemption constitutes an issue arising under § 522(c)(1) of the Bankruptcy Code. Section 1334(b) of the Judicial Code therefore confers jurisdiction upon this Court to determine this issue. 28 U.S.C. § 1334(b). However, this Court's jurisdiction to determine this issue is not exclusive, but concurrent with the State Court's jurisdiction. 28 U.S.C. § 1334(b). The automatic stay was lifted, to the extent applicable, to allow the State Court to determine "issues relating to termination of the parties' marriage and the rights of the parties to [m]aintenance, [s]upport and [e]quitable [d]istribution, if any." (Compl. Ex. A at 2.) It is common for a bankruptcy court to lift the automatic stay to allow a state court to determine matrimonial issues. See In re Cole, 202 B.R. 356, 361 (Bankr. S.D.N.Y. 1996) ("Federal courts, including bankruptcy courts, ordinarily defer to the state courts in matrimonial matters to promote judicial economy and out of respect for the state courts' expertise in domestic relations issues."). This is so because "state courts are more familiar with the concepts of marital property and how to apply the statutory and discretionary factors that govern equitable distribution." Id. It should be noted that at the time the State Court determined Mrs. Tarone's right to equitable distribution, the automatic stay was not in effect to prevent actions affecting the Homestead Exemption, because exempt property, such as the Homestead Exemption, is not property of the estate. See 11 U.S.C. § 362(c)(1) ("[T]he stay of an act against property of the estate . . . continues until such property is no longer property of the estate."). Nor

was the automatic stay in effect with respect to any action against the Debtor, because he had been granted his discharge. See 11 U.S.C. § 362(c)(2)(C) ("[T]he stay of any other act . . . continues until . . . the time a discharge is granted or denied."). Therefore, pursuant to 28 U.S.C. § 1334(b) and § 362, the State Court was not stayed from determining Mrs. Tarone's interest in the Homestead Exemption.

Moreover, the State Court had concurrent jurisdiction to determine whether Mrs. Tarone may reach the Debtor's share of the Homestead Exemption under § 522(c)(1). That section provides, in part, that exempt property, although not liable for certain prepetition debts of the debtor, is liable for debts of the kind specified in § 523(a)(5), i.e., domestic support obligations. 11 U.S.C. §§ 522(c)(1), 523(a)(5). State courts have concurrent jurisdiction to determine the dischargeability of a debt under § 523(a)(5), DiGeronimo v. Weissberg (In re DiGeronimo), 354 B.R. 625, 641 (Bankr. E.D.N.Y. 2006), and therefore it follows that the State Court has concurrent jurisdiction to determine whether the exempt property is liable for such debt under § 522(c)(1). This conclusion is consistent with the language of 28 U.S.C. 1334(b), which grants concurrent jurisdiction to state courts to determine matters arising under Title 11. Although the Bankruptcy Code contains certain exceptions to this general rule (e.g., § 523(c)(1), conferring exclusive jurisdiction on federal courts to determine the dischargeability of debts under § 523(a)(2), (a)(4), and (a)(6)), no such exception applies here.

Therefore, not only was the State Court within its jurisdiction to determine Mrs. Tarone's equitable distribution share of the Homestead Exemption, it was also within its jurisdiction to determine Mrs. Tarone's right to execute against the Debtor's share of the Homestead Exemption.

Case 8-09-08285-cec    Doc 17    Filed 07/22/10    Entered 07/23/10 15:30:25

12

Res judicata, also known as claim preclusion, prevents a party from relitigating a claim that has already been decided by a court of competent jurisdiction. Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997); Charell v. Gonzalez (In re Gonzalez), 241 B.R. 67, 72 (S.D.N.Y. 1999); see also Brown v. Felsen, 442 U.S. 127, 131 (1979); Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000). This doctrine assures finality of resolution of disputes. 19 Court Street Assocs., LLC, v. Resolution Trust Corp. (In re 19 Court Street Assocs., LLC), 190 B.R. 983, 997 (Bankr. S.D.N.Y. 1996). To determine the preclusive effect of a state court decision, a federal court must apply the standard utilized by the state in which the decision was rendered. 28 U.S.C. § 1738; Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523 (1986); In re Fischer, 252 B.R. 603, 613 (Bankr. E.D.N.Y. 2000).

New York courts apply a transactional analysis to determine the preclusive effect of a judgment. Ferris, 118 F.3d at 126. Under New York law, once a valid, final judgment is issued, the parties to the action are barred from relitigating claims necessarily decided in the judgment, as well as "'other claims arising out of the same transaction or series of transactions . . . , even if based upon different theories or if seeking a different remedy.'" Id. (quoting O'Brien v. City of Syracuse, 54 N.Y. 2d 353, 357 (1981)). A decision or order is given res judicata effect if it was a final disposition on the merits from which no appeal has been taken. See Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 268 (2d. Cir. 1997) (Under New York law, "res judicata applies where . . . there has been a final disposition on the merits from which no appeal has been taken."); Litz Enters., Inc. v. Standard Steel Indus., Inc., 394 N.Y.S.2d 765, 768 (N.Y. App. Div. 1977) ("Nor will a party be denied the benefits of res judicata where a final order on the merits has not been reduced to a formal judgment, if it is on the merits and the time to appeal has

expired."). This doctrine also applies to default judgments. <u>Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan</u>, 263 F.3d 196, 200 (2d Cir. 2001).

However, New York law permits collateral attacks on judgments obtained by extrinsic, as opposed to intrinsic, fraud. <u>In re Slater</u>, 200 B.R. 491, 495-496 (E.D.N.Y. 1996) (<u>citing</u> <u>Altman v. Altman</u>, 542 N.Y.S.2d 7, 9 (N.Y. App. Div. 1989)). Extrinsic fraud involves the parties' "opportunity to have a full and fair hearing," while intrinsic fraud, on the other hand, involves the "underlying issue in the original lawsuit." <u>Id.</u> at 496.

Here, the State Court, a court of competent jurisdiction, decided on October 31, 2007 that Mrs. Tarone is entitled to 50% of the Homestead Exemption, and on April 3, 2009, directed the release of the Homestead Exemption to Mrs. Tarone. The parties before this Court are identical to those in the state court action, and the issue presented here is the same as decided by the State Court, specifically, Mrs. Tarone's rights with respect to the Homestead Exemption. While the Debtor argues that he was not properly served with Mrs. Tarone's motion to obtain the net Homestead Exemption, this argument was implicitly rejected by the Appellate Division on July 2, 2009 when it denied the Debtor's motion to vacate the April 3, 2009 order. There are no other allegations of extrinsic fraud in the procurement of the State Court's April 3, 2009 order or the Appellate Division's July 2, 2009 order. Therefore, they are entitled to res judicata effect.

The Debtor argues that the Appellate Division did not decide whether the Homestead Exemption was reachable by Mrs. Tarone. However, this argument was raised in his motion (Compl. Ex. M ¶ 35), which was denied on July 2, 2009. Moreover, even though the Debtor's application seeking vacatur of the April 3, 2009 order did not specifically seek a determination that the Debtor's share of the Homestead Exemption is beyond Mrs. Tarone's reach, that issue arises out of the release of the net Homestead Exemption to Mr. Ray. Therefore, the doctrine of

res judicata bars the Debtor's claim for a judgment in the amount of the net Homestead Exemption.  See Ferris, 118 F.3d at 126.

C.  The claims seeking to expunge the judgments in favor of JR&A and N&A must be denied.

JR&A and N&A argue that the debts owed to them for attorneys' fees are nondischargeable, and therefore, there is no basis to expunge the judgments based upon those obligations.  The Debtor argues that those debts are dischargeable.  The Debtor further argues that neither JR&A nor N&A has filed a proof of claim in the bankruptcy case seeking payment of those amounts, nor have they commenced adversary proceedings to determine the dischargeability of those debts.

This Court must reject the Debtor's claims seeking to direct JR&A and N&A to expunge the judgments.  As discussed above, the awards of attorneys' fees are nondischargeable obligations pursuant to § 523(a)(15).  The judgments in favor of JR&A and N&A were rendered by a court of competent jurisdiction, and are therefore entitled to res judicata effect.  Moreover, there was no stay or injunction in effect in April 2009, when the judgments were sought.  To the extent the automatic stay would have applied, it expired on May 1, 2007 when the Debtor received his discharge.  See 11 U.S.C. § 362(c)(2).  Additionally, the applications of JR&A and N&A for the judgments were not enjoined by this Court's August 17, 2007 order because the injunction only applied to pursuing claims seeking to restrain or execute upon the Homestead Exemption.  Moreover, even if within the scope of the injunction, those actions would not have been barred because the injunction expired on March 3, 2008, when the Debtor's motion seeking the turnover of the Homestead Exemption was resolved by court order.  Therefore, there is no legal basis upon which to direct JR&A and N&A to expunge the judgments.

D. <u>The claims for sanctions, compensatory damages, and punitive damages must be denied.</u>

The complaint seeks sanctions against Mr. Ray, Daniel L. Nieroda, Sr., JR&A, and N&A for the following alleged violations of court orders or the Bankruptcy Code (i) Mr. Ray's attempt, by letter dated November 5, 2007, to obtain possession of the piano, painting, and title and registration to a Lincoln Continental (Compl. Ex. H.); (ii) JR&A's demand by letter dated February 23, 2009, to obtain (A) payment of attorneys' fees, maintenance, and Mrs. Tarone's equitable share in a Lincoln Navigator; (B) turnover of the piano and title to a Lincoln Continental; (C) information relating to the location of the painting or the proceeds, if the painting was sold. (Compl. Ex. G); (iii) JR&A and N&A's actions in April 2009 to obtain judgments for attorneys' fees; and (iv) actions by the Defendants to obtain the Homestead Exemption.

1. <u>Letter dated November 5, 2007</u>

On October 31, 2007, the State Court determined that the piano and title and registration to a Lincoln Continental should be turned over to Mrs. Tarone, and that a painting should be offered for sale and the proceeds split equally between Mrs. Tarone and the Debtor. The State Court also determined that, because it was a gift from her parents, the piano was separate property of Mrs. Tarone. "Whether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." <u>Musso v. Ostashko</u>, 468 F.3d 99, 108 (2d Cir. 2006) (<u>citing</u> <u>Butner v. United States</u>, 440 U.S. 48, 54 (1979)). Pursuant to this Court's August 17, 2007 order, the automatic stay was modified to permit the State Court to determine the issues relating to equitable distribution. If the piano was separate property of Mrs. Tarone, it was excluded from property of the estate, and therefore, any action to obtain possession of it did not violate § 362. Any action against the Debtor to obtain

possession of the piano was likewise not stayed under § 362 because he had already received his discharge on May 1, 2007.  Lastly, the attempt to obtain possession of the piano did not violate this Court's August 17, 2007 order because it fell outside the scope of the injunction contained therein because this was not an action "presenting or prosecuting any claims in the [State Court], or in any other [c]ourt, seeking to restrain and otherwise execute upon the Homestead Exemption claimed by the Debtor in this bankruptcy proceeding." (Compl. Ex. A at 2.)

The Lincoln Continental was not property of the estate on November 5, 2007, when demand was made for the turnover of the title and registration.  On February 5, 2007, the Debtor filed Schedule C, which claimed "personal property on Schedule B" as exempt.  (Case No. 07-70181, Docket Entry 10).  Schedule B, in turn, lists the Debtor's interest in the Lincoln Continental.  No objection to this exemption was ever made pursuant to § 522(*l*).  Therefore, because the Lincoln Continental was no longer property of the estate, any attempt to obtain the title and registration was not stayed pursuant to § 362.  Moreover, this attempt falls outside the scope of the injunction contained in this Court's August 17, 2007 order.

However, the painting was property of the estate at the time of the November 5, 2007 letter was sent.  Mrs. Tarone's interest in it was based upon the State Court's October 31, 2007 order, giving her an unsecured claim against the estate, Ostashko, 468 F.3d at 108, albeit a nondischargeable claim.  The painting remained property of the estate until February 21, 2008, when it was abandoned by the chapter 7 trustee.  (Case No. 07-70181, Docket Entry 83.)  Therefore, any attempt to obtain possession of it violated the automatic stay.

Nonetheless, the Debtor's claim for sanctions and damages must be denied because he has not alleged, nor established, that he suffered damages as a result of Mr. Ray's attempt to obtain possession of the painting.  This conclusion would be the same if the attempts to obtain

possession of the piano or Lincoln Continental were considered to be violations of the automatic stay.

Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "Violation of the automatic stay, standing alone, will not support award of damages under . . . § 362[k]." Siskin v. Complete Aircraft Servs., Inc., (In re Siskin), 231 B.R. 514, 521 (Bankr. E.D.N.Y. 1999). The Debtor's failure "to allege a cognizable injury" as a result of Mr. Ray's attempt to obtain the painting proves fatal to his claim for sanctions and damages. See Salem v. Paroli, 79 F. App'x 455, 456 (2d Cir. 2003) ("The district court correctly affirmed the bankruptcy court's dismissal of [the plaintiff's] claim that certain defendants violated the automatic stay in bankruptcy because [the plaintiff] failed to allege a cognizable injury."); see also Salem v. Paroli, 260 B.R. 246, 257 (S.D.N.Y. 2001), aff'd 79 F. App'x 455 (2d Cir. 2003) (plaintiff suffered no actual damages, and incurred no attorneys fees because he appeared pro se).

    2.   Letter dated February 23, 2009

The Defendants did not violate any stay, injunction, or court order by sending the Letter dated February 23, 2009 to the Debtor. The Debtor had already obtained his discharge; therefore, any action against him was not stayed. See 11 U.S.C. § 362(c)(2)(C). Nor did this letter violate the discharge injunction provided by § 524(a)(2) because the payments sought were on account of nondischargeable debts. Additionally, the chapter 7 trustee had abandoned the estate's interest in the Lincoln Continental and the piano, and therefore they were no longer property of the estate or protected by the automatic stay. See 11 U.S.C. § 362(c)(1). Lastly, the demands in this letter did not violate the injunction provided by the August 17, 2007 order,

which related solely to the Homestead Exemption, and which expired by its terms on March 3, 2008.

### 3. Judgments for Attorneys' Fees

JR&A and N&A sought their judgments for attorneys' fees against the Debtor in April 2009, almost two years after he received his discharge, and therefore did not violate § 362. Given that these debts are nondischargeable, there was no violation of the discharge injunction provided by § 524(a)(2). Additionally, these actions did not violate the injunction provided by the August 17, 2007 order, which related solely to the Homestead Exemption, and which expired by its terms on March 3, 2008.

### 4. Homestead Exemption

Mrs. Tarone, by Mr. Ray and JR&A, sought to obtain the Homestead Exemption in March 2009. Because the Homestead Exemption was not property of the estate, any act to obtain possession of it was not stayed pursuant to § 362. Additionally, because the Debtor's share of the Homestead Exemption was sought to satisfy nondischargeable debts, the Defendants did not violate the discharge injunction provided by § 524(a)(2). Moreover, motion to obtain possession of the Homestead Exemption did not violate the injunction contained in the August 17, 2007 order because that injunction expired on March 3, 2008.

## CONCLUSION

For the foregoing reasons, the Defendants are awarded summary judgment. This Court denies the Debtor's request for the imposition of sanctions and criminal penalties against the Defendants, as well as his request for an award of expenses and attorneys' fees. A separate order will issue.



Dated: Brooklyn, New York
July 22, 2010

_____
Carla E. Craig
United States Bankruptcy Judge